## THE PEOPLE *ex rel. v.* BEATTY, Auditor.

*(Supreme Court of Colorado, April Term, 1883—Error to the District Court of Arapahoe County).*

AMENDED CHARTER OF DENVER—SAVING CLAUSE.    Section 36 of the amended charter of the city of Denver, approved February 13, 1883, which provides that the "total amount of city warrants issued shall never exceed in any year the total net income of the city from taxes and other sources for the same year, after deducting from such income the amount required to pay and discharge the existing obligations of the city exclusive of its bonded indebtedness," does not operate to prohibit the issue of warrants provided for in the appropriation ordinance passed by the council prior to the approval of said amended charter, it being provided in the saving clause of the same that "nothing contained in this act shall in any manner affect or impair any proceeding had or done under the acts to which this is an amendment, or any rights or privileges acquired under said acts."

STONE, J.    The assignment of error questions the judgment of the Court below in sustaining the demurrer of the relator to the answer of the respondent.    The question thereby raised for our determination involves the authority and duty of the respondent, as auditor of the city of Denver, to issue a warrant upon the treasurer of said city in payment of the amount admitted to be due the relator, and approved for payment by the proper finance department of the city.

The denial of authority to issue this warrant, and which is made the ground of defense by the respondent in his answer, is made to rest upon the statutory provisions contained in section 36 of an act of the General Assembly, approved February 13, 1883 (Sess. Laws, 1883, p. 71), and which act constitutes the amended or new charter of the city of Denver.

That portion of the section referred to reads as follows:

"The total amount of city warrants issued shall never exceed in any year the total net income of the city from taxes and other sources for the same year, after deducting from such income the amount required to meet and discharge pre-existing obligations of the city, except its bonded indebtedness."

It is alleged in the answer that on the 14th day of April, 1883, the date of refusal of respondent to issue the warrant upon the demand of relator, the amount of the pre-existing obligations and expenditures of the city of Denver exceeded

the total net income of the city from taxes and all other sources of revenue for the fiscal year 1883, so that deducting the said amount of indebtedness and expenditures from the estimated total net income aforesaid, there was nothing left in the treasury or the fund for that year with which to pay the demand of the relator, and hence, under the provision of the charter cited, the respondent was and is prohibited from issuing the said warrant in favor of the relator, or any other or further warrant whatsoever upon the city treasurer during the said fiscal year.

This state of facts set up by the answer, would, standing alone, seem to be sufficient to constitute a valid defense to the grounds for the writ prayed for by the relator, for it would appear conclusive of the want of authority in the respondent to issue the warrant against the instruction of the statute; but a correct determination of the question requires an examination of all other provisions of the act affecting the question, and a consideration of its full purport touching the sufficiency of the answer.

It is admitted by the pleadings that on the 28th day of December, 1882, the city council, in accordance with the then existing law, passed the annual appropriation ordinance, by which the sum of $480,000 was appropriated for the fiscal year 1883. Of this amount $100,000 was set apart for the payment of outstanding warrants, and the balance was for the ordinary expenses of the different departments.

This total amount of $480,000 appropriated, was equal to the total amount of the estimated net income for the year 1883, and on the 14th of April, 1883, there had already been paid out upon accrued indebtedness the sum of $150,000, deducting which, together with the $100,000 set apart for outstanding warrants, left $230,000 at that date from which to defray the current expenses for the balance of the year; while at the same time the pre-existing indebtedness of the city, exclusive of the bonded indebtedness, exceeded this balance of $230,000, thus making it evident that if the provisions of section 36 of the charter act are to apply to the payments to be made for the year 1883, upon the appropriation already made, the respondent was without power or authority to issue the warrant for which the mandate was prayed.

Whether the provisions of section 36 are to apply depends upon whether they are to be considered without reference to the doctrine of the prospective operation of the statutes, or without reference to other limiting provisions of the act. The act, which repealed the former city charter, and which, by the provisions of section 36, creates a radical change in the *modus* of financial management, is not without a saving clause as to the changes effected by the act.

The repealing clause and the saving clause are together contained in section 2 of article XIII of the act, in the following words:

"An act to reduce the law incorporating the city of Denver, and the several amendments thereto into one act, and to revise and amend the same, approved April 6, 1877, and an act to amend the same, approved February 19, 1879, are hereby repealed; but nothing contained in this act shall in any manner affect or impair any proceeding had or done under the acts to which this is an amendment, or any rights or privileges acquired under said acts."

A careful consideration of the language employed in this saving clause, and its evident scope and purport fairly inferable as the Legislative intent, leads us to believe that it covers the act of appropriation of December 28 by the city council. That was an act had and done under existing law which did not require pre-existing indebtedness, accruing prior to the year for which the appropriation was made, to be deducted from the income of such year before warrants could be drawn upon such fund. Under the circumstances surrounding the legislation in this case, we may presume that the Legislature in enacting the new law did so with full knowledge of the financial status of the city at the time, for the intent of section 36 is evidently to place a wholesome restriction upon the city in contracting indebtedness, other than bonded indebtedness, beyond its ability to pay out of the ordinary revenues from year to year. The Legislature must have known of the amount of existing indebtedness, respecting which they were legislating at that time, and must also be presumed to have known the estimated revenue for that year, and that the entire amount had already been appropriated to cover the accruing expenses

of that year, exclusive of prior obligations. A knowledge of these facts implies a knowledge as well that if the restriction upon the issue of warrants contained in section 36 was to apply to the funds already appropriated for 1883, it would not only operate retrospectively, but would thereby seriously impair and cripple the administration of the city government for all the rest of the year 1883. Interpreting the language of the saving clause in this view, and in accordance with the established canons of statutory construction, we think the act of the city council, in the appropriation of the revenues for 1883, was an act embraced in the saving clause as one not to be affected or impaired by the new law, and that such act implies a right or privilege thereby acquired under existing law, to expend the fund so appropriated, with authority on the part of its auditing and disbursing officers to issue warrants in the payment thereof, for the proper uses and purposes designated in the appropriation ordinance, and that the act was intended to operate prospectively only upon the administration of the revenues of the city not already appropriated.

Upon this construction of the act it is unnecessary for us to notice the argument of counsel upon the constitutional inhibition of retroactive laws; since, upon our view of the act in question, we do not regard it as possessing a retrospective character or intending a retroactive operation in the particular which is brought in question before us.

Resting our conclusions upon what we conceive to be the plain and fair intendment of the act itself, we will not go beyond this view to cite authorities or discuss doctrines of statutory construction and operation, nor allude to the financial condition of the city, or the effect of the provisions of the new charter thereon, further than we have deemed pertinent to the sole question before us.

This is not a question involving the right or authority of the city to contract debts, or to increase its existing indebtedness, or incur new obligations, or to pledge or further extend its credit, but merely whether the funds already appropriated before the adoption of the new charter may be paid out for the ordinary expenses of the city, as designated in the appropria-

tion ordinance, accruing within the time for which such funds were appropriated, and we decide no question beyond this.

Upon this view of the law we must hold that at the time the warrant was demanded by the relator, the respondent not only had lawful authority to issue the same, but that, under the admitted facts, it became his duty to do so.

The demurrer was, therefore, correctly sustained by the Court below, and the judgment awarding the peremptory writ of *mandamus* is accordingly affirmed.

*France & Rogers*, attorneys for petitioner.

*M. B. Carpenter*, attorney for respondent.